# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| Sandra Dottenwhy,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Aspirus, Inc.,<br><br>　　　　　Defendant. | Court File No. 22-cv-0342<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Sandra Dottenwhy ("Plaintiff") as and for her Complaint against Defendant Aspirus, Inc. ("Defendant"), states and alleges upon knowledge with respect to her own acts and on information and belief with respect to all other matters, as follows:

## INTRODUCTION

1. Plaintiff is a former employee of Defendant. Defendant is a healthcare system. Prior to her termination, Plaintiff worked as a certified pharmacy technician for the Aspirus Wausau Hospital, Inc. Plaintiff Dottenwhy worked for the Defendant for 18 years.

2. On or about August 2021, Defendant mandated that all its employees be vaccinated for COVID-19 as a condition of continuing employment. Plaintiff applied for a religious exemption to avoid taking the vaccine because of her sincerely-held religious beliefs. Defendant denied Plaintiff's application for a religious exemption without providing any reason.

3. As a result of Defendant terminating Plaintiff's employment, Plaintiff has commenced this action seeking relief under Title VII for religious discrimination.

## PARTIES

4. Plaintiff Sandra Dottenwhy is a health care worker formerly employed by Defendant and who resides in Mosinee, Wisconsin.

5. Defendant Aspirus, Inc. is a Wisconsin non-stock corporation with a registered office at 2200 Westwood Dr., Wausau, WI 54401. Defendant is a non-profit health care organization that operates thirteen hospitals, 75 clinics, hospice care, pharmacies, and provides other health care services.

## JURISDICTION AND VENUE

6. Plaintiff brings this action under federal law. Plaintiff is asserting claims for religious discrimination under Title VII of the Civil Rights Act of 1964. Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued Plaintiff a right to sue letter.

7. This Court has original subject matter jurisdiction over this matter, as it raises claims under federal law pursuant to 29 U.S.C. §1331.

8. This Court has personal jurisdiction over Defendant Aspirus, Inc., because it is a business incorporated in Wisconsin and operating in Wisconsin.

9. Venue is proper in the Western District of Wisconsin under 28 U.S.C. § 1391(e)(1) because the actions giving rise to this cause of action occurred in whole, or in part, in Marathon County, Wisconsin and Defendant Aspirus, Inc. conducts business in Marathon County, Wisconsin.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

10. Defendant is a health care provider in Wisconsin and operates hospitals in Wisconsin.

11. Plaintiff worked for Defendant as a certified pharmacy technician for 18 years.

12. As a result of the Covid-19 pandemic, Defendant issued a requirement that every employee, including those working remotely, submit to bi-weekly testing for the Covid-19 virus or be vaccinated against the Covid-19 virus.

13. As a result of the Covid-19 pandemic, on December 5, 2020, Defendant issued an email to all employees stating that Covid-19 vaccines would soon be available and encouraged the employees to obtain the vaccine. In addition, Defendant stated that it would not force any employee to receive the Covid-19 vaccine. Defendant encouraged each employee to get the vaccine in hopes that the vaccine would prevent those vaccinated employees from infecting either Defendant's other employees or Defendant's patients with the Covid-19 virus.

14. On November 11, 2020, Defendant required each employee to notify Defendant by November 24, 2020 whether the employee would commit to receiving a Covid-19 vaccine or would decline to receive the Covid-19 vaccine.

15. Plaintiff Dottenwhy submitted to Defendant a request for a religious exemption on or about November 11, 2022.

16. On August 5, 2021, Defendant issued a requirement that every employee, including those working remotely, submit to bi-weekly testing for the Covid-19 virus if

3

the employee was not vaccinated against the Covid-19 virus. The purpose of Defendant requiring Covid-19 testing was to ensure that if one of Defendant's employees was infected with the Covid-19 virus, the Defendant could isolate the infected employee from Defendant's other employees or patients to prevent the infected employee from infecting those other employees or patients with the Covid-19 virus.  Plaintiff complied with this job requirement.

17.     On or about November 5, 2021 Defendant sent a notice to employees, including Plaintiff, that all of Defendant's employees, including Plaintiff, would be required to obtain a Covid-19 vaccine as a condition of employment ("Vaccine Mandate Policy").  Defendant's Vaccine Mandate Policy further specifically stated that if any employee, including Plaintiff, refused to take the Covid-19 vaccine, Defendant would terminate the employee's employment with Defendant on December 6, 2021.  Defendant classified employees refusal to take the vaccine as a "voluntary resignation", but then somehow buttressed Plaintiff's supposed "voluntary resignation" by stating that Plaintiff would be "locked out" of the Pharmacy at which she worked, clearly resulting in an involuntary termination.  Plaintiff communicated to Defendant in writing that she was ready, willing and able to continue with her job duties despite not being vaccinated.

18.     In addition, Defendant's Vaccine Mandate Policy provided a process for submitting and evaluating religious exemptions to taking the Covid-19 vaccine.  The Defendant's Vaccine Mandate Policy stated the following with respect to submitting a religious exemption:

**Important Guidance Relating to Completing this Submission**

Applicants are encouraged to following the following guidance in completing this form. The information solicited is intended to permit a decision on the application in a timely manner, and non-compliance with this guidance may result in either a denial of the request or the initiation of an interactive process.

Please cite a primary or single reason or sincerely held belief related to your exemption to the vaccine. If multiple reasons are submitted, you may be denied an exemption; if one of the reasons contains information or rationale that fails to support the application.  Please understand that the evaluation is a secular (non-religious) process, and that submissions should be submitted in a manner that in plain language ties a sincerely held religious belief to the objection to the COVID-19 vaccine. Citing scripture or sacred texts, which are subject to interpretation, without a clear explanation or connection between the sincerely held religious belief or principles and vaccination will not support the evaluation.

Please know that including misinformation (not supported by widely accepted medical or scientific information) or including non-religious rationale anywhere in the submission will likely result in denial. Examples include:

Misinformation such as microchip, magnets, DNA-altering technology, use of animal cells or tissue in vaccine development, the presences of fetal cells or tissue in the vaccine, adverse impact on fertility, and lack of safety or efficacy information (see myths addressed by the CDC)

Proposing legal arguments including the constitutional, regulatory, or privacy justification for vaccine exemption.

Social, philosophical, political, or economic beliefs. Exemption requests must present clear connection between a sincerely held religious belief or principles and vaccination.

19. Plaintiff's sincerely held religious beliefs prohibited her from taking the Covid-19 vaccine.  Plaintiff Dottenwhy is a Christian who believes, as she has discerned from prayer and study of Scripture, that her body is a Temple of the Holy Spirit. Plaintiff also asserts that Defendant's "rules" regarding her request for religious exemption prevented her from composing an exemption request which properly characterized her

5

religious objections to taking the Covid-19 vaccine. Plaintiff Dottenwhy believes it would violate the sanctity of her conscience and her body to take the vaccine. As a result, Plaintiff sought a religious exemption from Defendant from taking the Covid-19 vaccine.

20. On or about November 10, 2021, Defendant and its general counsel were put on notice about several (but not all) legal and factual inaccuracies contained in their vaccine exemption policy, by attorney Michael McHale, special counsel for the Thomas More Society, a Non-Profit organization dedicated to the protection of religious liberty. An excerpt from his correspondence is as follows after a quoted reference listing the Defendant's guidelines for religious exemptions as set forth above:

> All of these features blatantly contradict Title VII's "broad" protection for religion in the workplace, which must be accommodated so long as the employer cannot "demonstrate" it would pose an undue hardship. Indeed, the Aspirus requirements do exactly what the EEOC forbids—i.e., categorically "assume" that particular religious beliefs are not religious and/or not sincere. Indeed, the fact a religious belief is not "understandable" to a secular "evaluator" is hardly a basis for denying a request for religious accommodation, given our country's deeply embedded tradition that "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit [legal] protection." Thomas v. Rev. Bd. of Indiana Emp.Sec. Div., 450 707, 714 (1981).

> Unsurprisingly, the policy itself contains misinformation by asserting that aborted fetal cell lines "are associated only with" the Johnson & Johnson vaccine's production, when in reality even the U.S. Court of Appeals for the Second Circuit recently acknowledged that aborted fetal cell lines "were used for testing in the research and development phase of the mRNA (Pfizer-BioNTech and Moderna) COVID-19 vaccines and in the production of the Johnson & Johnson COVID-19 vaccine." *We the Patriots USA, Inc. v. Hochul*, Nos. 21-2179, No. 21-2566, at 12-13, https://www.govinfo.gov/content/pkg/USCOURTS-ca2-21-02179/pdf/USCOURTS-ca2-21-02179-0.pdf.4,5 The policy also apparently assumes there can be no valid religious objection to using aborted fetal cell lines in the research and development phase of a vaccine—an appalling assumption in itself, and again, a brazen violation of federal law requiring the *exact opposite* assumption when an employee submits

a request for religious accommodation on such grounds. *See* EEOC Guidance, *supra* at L.2 and K.12. Moreover, there is an abundance of religious support for the proposition that undergoing an injection that came to market through *any* developmental connection to aborted fetal cell lines can be a grave moral violation. This includes:

**Bishop Joseph E. Strickland:**
I urge you to reject any vaccine that uses the remains of aborted children in research, testing, development, or production. Testify to the truth that abortion must be rejected and make a choice that is consistent with the dignity of every human life from conception to natural death and is rooted in a mature faith and trust in eternal life, not fear of suffering in this life.

21. In conjunction with attorney McHale's description of Defendant's misrepresentations related to Christian fetal cell objections to use of the vaccine Defendant's Vaccine Mandate Policy also contains other unlawful restrictions on its employees' descriptions of their religious beliefs. In Defendant's first bullet point, Defendant threatens denial of a religious exemption if the employee asserts multiple religious reasons for objection to the vaccine and not all of them are logically connected to vaccination in the eyes of Defendant's admittedly "secular" evaluators. Despite Christianity's basis on biblical teachings, Defendant instructed its employees to refrain from scriptural references unless they could express a connection to the vaccine which would satisfy Defendant's secular evaluators. Defendant further goes on to state that citing to facts which have not been accepted by the balance of the scientific community can result in denial of the exemption request. Many of the facts Defendant alleged in its description concern negative effects on fertility, fetal cells, or effect on DNA, have either been disproven (each of the vaccines either includes or was derived from aborted fetal cell lines), or cast into significant doubt by current data (scientific study from Sweden

7

stating that the vaccine is broken down to make new DNA), (Department of Defense data disclosed by whistleblowers which demonstrates a potential causal link between vaccination and increased risk of severe medical disorders, in conjunction with current studies which demonstrates that the spike proteins settle in the ovaries and other vital organs post vaccination).

22. Plaintiff submitted to Defendant a request for a religious exemption from taking the Covid-19 vaccine with respect to Plaintiff's employment with Defendant as a certified pharmacy technician which included references that she had prayed to the Lord about taking the vaccine and she felt that the Lord had indicated not to take it. On November 17, 2021, Defendant notified Plaintiff that her request for a religious exemption from taking the Covid-19 vaccine was declined.

23. Plaintiff Dottenwhy appealed the denial of her request for a religious exemption. Defendant denied Plaintiff's appeal with no further explanation. As a result, Plaintiff was terminated on December 6, 2021.

24. Defendant never engaged in any interactive and individualized process in order to find an accommodation with respect to Plaintiff's request to be exempt from taking the vaccine, but Defendant simply issued a blanket denial of the requested exemption asserting that "you did not make a clear connection between your sincerely held religious beliefs and your inability to accept the vaccine."

25. On December 6, 2021, Defendant terminated Plaintiff's employment with Defendant Aspirus based solely on Plaintiff's refusal to take the Covid-19 vaccine due to

8

her religious objections to taking the Covid-19 vaccine. Plaintiff did not quit or resign her employment.

26. Plaintiff received positive job performance reviews.

27. Plaintiff was 64 years of age at the time of her termination, and was at the top of the pay scale for her position. Upon information and belief, Defendant terminated Plaintiff because of Plaintiff's high rate of pay.

28. Plaintiff filed a charge of religious discrimination against Defendant with the EEOC.

29. The EEOC issued a right to sue letter to Plaintiff on March 23, 2021.

**Claims for Relief**

**FIRST CAUSE OF ACTION**

**Discrimination and Failure to Accommodate, and Retaliation under Title VII of the Civil Rights Act of 1964 – Religious Discrimination**

30. Plaintiff restates and realleges paragraphs 1 through 29 as if fully set-forth herein.

31. Defendant is an "employer" within the meaning of 42 U.S.C. § 2000e(b).

32. Plaintiff is an "employee" within the meaning of 42 U.S.C. § 2000e(f).

33. Title VII of the Civil Rights Act prohibits discrimination on the basis of religion. *Id.* § 2000e-2. The Act further requires covered employers to provide reasonable accommodation to her employees' sincerely held religious beliefs. *Id.* § 2000e(j). The

law further prohibits employers from retaliating against employees who exercise their religious rights under Title VII and the Bill of Rights.

34. Plaintiff submitted a request for a religious exemption to being vaccinated with a Covid-19 vaccine.

35. Defendant rejected Plaintiff's request for a religious exemption.

36. Guidance issued by the Equal Employment Opportunity Commission requires that requests for reasonable accommodation be considered based on the employee's individual, particularized circumstances, and that any claim of undue hardship by the employer be assessed on a case-by-case basis rather than through application of a blanket rule.

37. In response to the Plaintiff's requests for reasonable accommodation of her sincerely-held religious beliefs, Defendant applied a uniform, blanket rule, leading to her termination in violation of both Title VII and the EEOC's persuasive guidance on reasonable accommodation.

38. Despite the Plaintiff's consistent offers to engage in dialogue, Defendant refused throughout to engage in the interactive process, and instead rejected Plaintiff.

39. As a result of Defendant's failure to approve Plaintiff's request for a religious exemption for the Covid-19 vaccine, Defendant terminated Plaintiff's employment in conjunction with its Covid-19 requirements.

40. Defendant's denial of Plaintiff's request for a religious exemption to give booster shots was unlawful given that Defendant approved Plaintiff's request for a religious exemption from receiving the vaccine. However, by adding that as a job

requirement and forcing Plaintiff to give booster shots outside of her then current job duties, and denying her reasonable accommodation request to have the nine vaccinated nurses perform these shots constituted may for the Plaintiff's exercise of her religious rights.

41. Defendant's actions constitute discrimination on the basis of religion and failure to accommodate, all in violation of 42 U.S.C. §§ 2000(e)-2 and 2000(e)(j).

42. Because of Defendant's unlawful actions, the Plaintiff has suffered and continue to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## SECOND CAUSE OF ACTION

**Discrimination and Failure to Accommodate under the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.**

43. Plaintiff restates and realleges paragraphs 1 through 42 as if fully set-forth here.

44. Defendant is an "employer" within the meaning of the ADA - 42 U.S.C. §12111(5)(A).

45. Plaintiff is an "employee" within the meaning of the ADA - 42 U.S.C. §12111(4).

46. The ADA provides that its general prohibition against discrimination "shall include medical examinations and inquiries" by an employer. 42 U.S.C. § 12112(d)(1). Specifically, an employer may not "require a medical examination [or] make inquiries of

11

an employee as to whether such an employee is an individual with a disability or as to the nature or severity of the disability." 42 U.S.C. §12112(d)(4)(A).

47. Defendant's Vaccine Mandate Policy and requirement that employees undergo testing for Covid-19 violates 42 U.S.C. §12112(d)(4)(A). Neither the Vaccine Mandate Policy nor requiring Plaintiff to give booster shots was job related or consistent with business necessity.

48. As a result of Defendant's actions, Plaintiff suffered and continues to suffer economic and other damages in amounts to be proven at trial, including front pay, back pay, emotional distress damages, compensatory damages, punitive damages, and attorney fees in excess of $75,000.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues for which she has a right to trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff above-named prays for judgment in her favor and against Defendant, and for an Order of the Court as follows:

1. Adjudging that Defendant is liable to Plaintiff for her actual damages in an amount to be proven at trial, including front pay, back pay, treble damages and statutory penalty, interest, emotional distress and pain and suffering, compensatory damages, punitive damages, and any damages or penalties available at law;

2. Awarding Plaintiff her costs, attorney fees and any other relief permitted by statute; and

3. Awarding such other relief as the Court may deem just and equitable.

Dated: June 21, 2022

*s/Gregory M. Erickson*
Gregory M. Erickson, 1050298
Erick G. Kaardal, 1035141
Mohrman, Kaardal & Erickson, P.A.
150 South Fifth Street, Suite 3100
Minneapolis, Minnesota 55402
Telephone: 612-341-1074
Facsimile: 612-341-1076
Email:erickson@mklaw.com
*Attorneys for Plaintiff*